Today, four cases, three of them being argued and one of them being submitted on the briefs. I will just note for the record the case that's being submitted on the briefs. It's number 2008-3348, Fritz v. Social Security Administration. Again, that case is being submitted on the briefs without oral argument. The first case in which we will hear oral argument this morning is number 2008-1222, MPT v. Marathon Labels. Mr. Wilson. Thank you. Good morning. Good morning. You've reserved five minutes for rebuttal, right? Yes, Your Honor. Okay, I just wanted to confirm and you can step up and begin whenever you're ready. Thank you, Your Honor. If it pleases the court, it certainly pleases me and I may be the only one in the room to be back here again on the same case, perhaps for the same or slightly different reasons than I was here a year and a half ago. Oh, yes, I remember. The result the last time breathes some fresh air into the future of the prospects for Marathon, a company which I still represent, to be able to manufacture and sell a patented placard product we've come to call the SSP, which, if anyone cares, stands for Smart Surface Placard. Why are you back up here again? Your Honor, I... Nothing except the mandate question. Is there really a concern? Well, to me, it's a great deal more than that, Your Honor. The mandate issued, the... Except on the mandate issue. Well, if I understood my position on the remand, there was no injunction at that point. The injunction that had existed was reversed. The injunction as... No, it was to be modified, I think. I'm sorry? It wasn't reversed. It was to be modified. Well, I read your order, Judge Moore's order, in a different way. I thought that the remand not only reversed the injunction but vacated the injunction. So I had my first next opportunity to try to get the trial court to rebalance the equities and, for my part, to allow sales in the United States, as long as they were not for use in infringing the plaintiff's method patent of this so-called SSP placard. That was my objective. I had, I thought, a fulsome argument with the two of the judges on the panel about whether or not the initial injunction should be reversed for clear error. That didn't happen. But I think it came to be understood, at least I thought it came to be understood, that the judge's injunction was based upon the fact that the record as she viewed it in the trial court did not predict adequately for her a circumstance under which Marathon could sell the SSP, a component of the method claims in the plaintiff's patent, without, again, infringing the patent. That was her opinion. That's why she rendered the judgment she did. That judgment and the injunction based upon that judgment was taken away. So my purpose was to go back and plead with the court to consider, since it's very simple technology, some future applications, if you will, some future uses of the SSP placard, which indeed would not infringe the plaintiff's method patent. I could have done, I could have come back here another way. I could simply have, I suppose, gone ahead when, to my surprise, the trial court did not re-enter an injunction. I could have boldly gone ahead, I suppose, and produced, or had my client produce and sell the Marathon placard. And I am quite certain, with Mr. Shunk's urging, that the court would have asked me to answer in contempt of what the trial court perceived to be an injunction. But I want to make sure that my position is understood. If it doesn't agree with your reading of the previous order, then I've missed something, Your Honor. But I read it to be a complete remand. We were going to do it. We're going to start over on the question of, A, whether there should be an injunction and what it should look like. Now, the tricky business is, I suppose, that in a contributory infringement... Let me ask you this, though, Mr. Wilson. In the first case, we, as I understand it, and please correct me if you think I'm wrong, we said the judge in the district court got it right on everything that was raised, except for the language of the injunction. Right? Do you agree with that? We say at the end of the opinion, the court affirms all other issues that are appealed. And one of the issues, I think, was non-infringing uses, purported non-infringing uses. So we sent it back for the district court to reword the injunction to allow sales to Mexico or sales to someone here who was purchasing it for the sole purpose of then sending it to Mexico. And the district court then entered an order effectively changing the injunction to do that. Right? I mean, it said the injunction should be interpreted as... That's what... But I mean, that's effectively... Well, that was my dilemma, Your Honor. Three days before the opinion of this court got back to the district court, the court, anticipating, I guess, that it was coming in the form of maybe a mandate, put on a judgment entry saying, please interpret my injunction in accordance with what the opinion says. That is, the sales outside of the United States essentially are okay. That's what we told the district court to do. Well, I didn't read your order that way. I thought what you basically did was to reset the table for me. Maybe I read too much into it. It says, given the party's admissions, the district court should not enjoin sales of the SSP to locations outside the United States and should not enjoin sales of the SSP to resellers who sell to locations outside the United States. Therefore, we reverse the grant of the injunction as written and remand for further proceedings. I think one would conclude the further proceedings are for the purpose of changing it in line with our direction in those preceding two sentences. And then we say the court affirms all other issues that are appealed. I mean, I guess if we didn't have this little odd situation of when the district court acted, you can say it had gone down, the mandate had come down, and then the court had issued an order saying the injunction is revised as follows, and it followed the language of our decision, what would be the problem? The problem would be, and here at my peril I'm thinking about what you said in the last oral argument, the injunction would still be way overbroad to prohibit all sales of the SSP in the United States. What did you say? What we said? You mean what we said in our order? You suggested that to put some words at the end of that broad, gross prohibition to the effect that the sales are not to be used to infringe the method, prohibit sales that are made or possibly to be used to infringe the method. That's the law, and I think I liked what you said, it just wasn't acceptable in my co-counsel. Well, I'm pleased that you like what I said, but the problem is, and I assume that you're accurately reflecting that, sometimes I can't remember what I said the day before. I put it in my brief. But the fact of the matter is, whatever I said in oral argument, whether it was good, bad, or indifferent, we then came down with an order, and that's what stands, not what I said or what anyone else on the panel said. I understand that, Your Honor. I was starting with Judge Archer's question. I was trying to give you my view of things. No, that's fine. You make your argument as appropriate, but I'm just saying I think it's the order that would control. Well, again, the order vacates the injunction, remands the case for further proceedings. If the only further proceedings were necessary, as I think you are now suggesting, was for the judge to incorporate the language from your opinion to limit the order, you didn't have to vacate the injunction. You didn't have to reverse the injunction. I took the vacation of the reversal to mean I got a whole lot more than just a trimming, if you will, of the external edges, that is, sales outside of the United States. I thought I had convinced someone on the panel that when you issue a permanent injunction against, in particularly a contributory infringement case, and involving a method patent, and the injunction is directed at a component which is not itself patented, you've got to look forward. You convinced everybody on the panel to the extent reflected in the order, because it was a unanimous order. There was no dissent or concurrence. I didn't see it. Right, yes. So I thought that was my license, if you will, to gear up and go and try to convince the judge that, you know, first of all, the record already contains, it may be in a backhanded way, but it already contains examples in the plaintiff's own product catalog, in the Avery Denison catalog, in the IRS label examples, all of which are in the previous appendix, of uses which would not infringe the plaintiff's method patent. Granted, they were not Marathon's uses, but that's because we hadn't yet reached the stage where we had to consider that the method patent would be upheld, and that we would have to respect what the essential component inside those method claims looked like, and whether we, if you will, fit within the parameters of that component as described. Now, Mr. Wilson, excuse me, I don't want to jump on you here, but I mean, you're into your rebuttal. Do you want to say that, or do you want to just... I perhaps should say that I think I... Well, I'll give you your full... We'll give you your full rebuttal of five minutes. All right. You've only gone over a little bit, so you'll have your full five minutes if you need it. Thank you. Mr. Shunk. May it please the Court. Mr. Wilson's last remarks, I think, indicate why he is really here, and that is he has never accepted the fact that the jury and Judge Gahan and the first panel in the MPT1 case all concluded that there were no substantial non-infringing uses for the SSP product. That's an issue that, and even today, in outlining those uses that he believes exist, he referred to evidence that was presented in the first trial of this case and was considered by the first panel in issuing the first opinion in this case. The jury, Judge Gahan, and the first panel in the MPT1 case all concluded that the evidence did not support a finding of substantial non-infringing use. Mr. Wilson has never accepted that. Now, when the case went back down again, he again made the argument and suggested in his Rule 60B motion, which I don't even believe is on appeal here, but he made that suggestion that there was going to be new evidence that he wanted to present to the Court to re-argue the issue of substantial non-infringing use. However, he never provided an affidavit as to what that might be. He didn't even say from an attorney's argument standpoint what it might be, and he never provided any indication about why he couldn't have brought that evidence to the Court during the first trial or at some earlier time. And so the issue of whether there is a substantial non-infringing use is law of the case and subject to the mandate rule. It's been decided, it's done, and it simply doesn't bear any further litigation. I also heard Mr. Wilson repeatedly refer to the fact that the first panel had vacated the initial injunction issued by Judge Ghosn. That's not the case, as Judge Archer has pointed out. If you read at page 116 of the appendix the actual words of the first panel in this case, they end by saying that the opinion of Judge Ghosn is reversed and remanded. They do not use the words vacating or vacated applied to the permanent injunction. Now, I know that the technicalities of the specific word used at the end of the Court's order don't necessarily govern, but I think the same conclusion can be drawn by examining the rest of the order. As Judge Shaw has pointed out, reading that order, it's very clear what this Court wanted Judge Ghosn to do. The MPT 1 panel wanted Judge Ghosn to make clear that sales outside the country or to an individual in the country who would then resell outside the company were permissible, and that's exactly what she did. I would ask... What we did was we said we reverse the... Opinion. Well, we reversed the grant of the injunction as written. That was all. That was the extent of reversal. We affirmed everything else, but we reversed the grant of the injunction as written. Right, but I don't believe you vacated it, and I think that the same conclusion can be drawn from reading the rest of the opinion, and that's what district courts and litigators are supposed to do, read the entirety of the opinion and draw a conclusion about what the meaning of the mandate is from that. One thing that hasn't been addressed yet that I would ask the Court to consider is what I think is the most important question. What is on appeal, and was it timely appeal? Every indication from the explicit statement in the notice of appeal to the description of the matters on appeal in the blue brief, in this particular case, in the second MPT appeal, show that it is a January 31 order about the award of costs to my client, and the appellant has seized on that order because, frankly, the appellant realizes that it was too late in attempting to appeal the December 17 order of Judge Gahn, which is really what his appeal is all about. This is not a question where somehow procedurally the appellant has been trapped in a situation where he was unable to bring the appeal in a timely fashion. On December 17, the appellant knew what Judge Gahn had done, could read the extent of her order, and had 30 days under the statute thereafter to appeal it. Let me ask you one question, just getting back to the injunction. If one were to go to the courthouse now and wanted to see what the terms of the injunction were, I guess that person would be presented with two documents, the original injunction and then the subsequent order by the district court. Is that correct? Yes, Your Honor. And I should say, Your Honor, as well, that brings up an interesting point because the whole issue of the question whether Judge Gahn had the jurisdiction to enter that order when she did or the language of the order, whether it should have been one document that set out all the parameters of the injunction rather than an explanation or a refinement of the previous order, none of that was raised by the appellant below. If the appellant were really concerned about this issue of Judge Gahn having acted very quickly between the issue of the first panel's order and the mandate, they should have brought that to Judge Gahn's attention. My suspicion is Judge Gahn would have said, fine, I'll reissue it now. What, in fact, Judge Gahn did was to act promptly in order to protect the interests of my client, Judge Gahn realizing that this court wanted an exact statement, perhaps more precise than she had previously issued about what the extent of the injunction was. She decided to act quickly, and she did that in aid of getting a more perfect injunction on the record as soon as possible. Basically just picked up the language of Judge Moore's decision. Exactly, exactly. And so if the court is with me on the issue of what is really on appeal here, that being this January 31 order about costs that the appellant really doesn't take any issue with, then I think we have the facts in the Suntec case, a case in which there was an appeal not from the actual result of the order but rather from some language in the order that threw some aspersions on counsel involved. And counsel and his client were not really concerned at that time, apparently, with appealing the underlying meaning or the effect of the order, but they wanted, apparently, an expungement of the line or two in the order that cast some doubt upon the appropriateness of the actions of counsel. This court in the Suntec case said, we hear the appeal of orders, not of written language in these opinions, and this court found that it was frivolous to take an appeal of language in an order when it was clear that the underlying order itself was not being appealed. I think that's the situation here. I hear Mr. Wilson's explanation that he didn't understand what this court's prior order meant and that perhaps if this panel reads it more broadly than he does, I don't know whether he was conceding that perhaps he's wrong if his reading of the prior order is wrong, but this action continues to cost my client a great deal of money to defend against, and it's particularly troublesome given the fact that every time we appear, we continue to hear issues raised that have been resolved by a jury, a trial court judge, the MPT1 panel, and then again before Judge Gahan, and another brief there, and now an appeal, where we're still talking about the question of whether there are substantial non-infringing uses for this product when, in fact, that has already been decided. In addition, and it's a small point, but because of the appellant's refusal to abide by the rules of this court for determining whether or not the record should be bound with the blue brief or should be presented separately after the gray brief, in order to give this court a joint appendix that it could actually use to read the references cited by the parties, we were forced to incur the cost as appellee of preparing that record to make sure it came to you. All of those issues, Your Honor, lead me to the Abbs v. Principe case, which is the other case we cite on the frivolousness of appeal, that talks about whether the appeal is frivolous in the filing or frivolous in the argument. I would argue that both have occurred here in the sense that the appellant has clearly appealed from an order that he clearly knew he was never going to argue against, this order about court costs, and then in addition has conducted the appeal in a way that has cost my client not just the cost of defense, but also the cost of undertaking activities that should have been undertaken by the appellant. I would urge the court to consider the appropriateness of an award of attorney's fees and costs in this case on this appeal. I have no other issues to raise to the court unless the court has further questions for me. No, I think we're all set. Thank you, Mr. Shum. Thank you, Your Honor. Mr. Wilson, you have your rebuttal. Thank you, Your Honor. Again, you have your five minutes if you need it. First of all, just an observation about the jury finding no substantial non-infringing use. I think if you look at the jury's verdict, there is no expression from the jury that they were even given that question. Well, but whatever the case is of that issue, that's been decided. I agree. I agree. But I guess the difficulty I have in looking ahead to a permanent injunction is that it permits no sales of this placard for non-infringing uses. A representative sample of which I spoke about the last time I was here, which is the placard in my library book. Now, all I wanted was to use the imagination I perceived that the court was applying when I was here last time to seize on, if you will, the opportunity to go back and examine the record we had and to look forward to a permanent injunction that would be balanced for both parties. I would be prohibited from making a product for use in infringing the method patent. That's what the plaintiff is entitled to. I think you ought to direct your attention to responding to the other question. I will do that, Your Honor. The sequence I have I mentioned before, which is that... Well, you have not appealed from the 60B order. I have not. I am not sure, and I am candid, I hope, in saying this, that there is yet an order to be appealed from, but I had a Hobson's choice, and I chose not to wait any longer... You have appealed from... The January order because, again, the court... You haven't argued anything on that. Internal to the order which assessed costs was the trial court revisiting, reminding everyone, now that the court had the mandate, of the language she had adopted preemptorily, if you will, in December, three days before the opinion got back and two weeks at least before the mandate issues. The orders of this court are very clear. The mandate did not... Is your appeal timely up here? It is if that January order is, in fact, a reinstatement of the injunction. It certainly is. It's within 30 days of that order. The order in December, I'm sorry, I just consider it to be a nullity. It was issued when the court had no jurisdiction to issue it. It wasn't issued to preserve a status quo. It was clear that the injunction was going to be vacated, that there were going to be new proceedings. Counsel could have and the court... You have made no argument as to the order that you appealed. Is that correct? I thought that was what my whole argument was about, that the order which I have appealed leaves in place the grossly broad injunction that was issued two years ago with some trimming, if you will, if that truly has been incorporated in the injunction. The injunction was never re-entered. But I have to assume, again, to face these arguments that I'm untimely, I had to make the assumption that the January order... You're saying you have the January cost order, there is a reference in there to the amendment of the injunction. You are not appealing the cost. What you're saying is you have enough traction, if you will, from the language of the order to allow you to mount an appeal with respect to the terms of the injunction. That's your contention. There are two other, if not the direct appeal issue, there are two other ways that I would like to plead to the court for some relief here. OK, because you only have about a minute. I can't let you go really beyond that because we have extended it a bit. One is, to protect your mandate, which I think was misunderstood by the trial court, not by me, but that's my opinion, you could use the supervisory power of the court to do it yourself. You could have... And that's why I took this to be kind of an open field. You could have, instead of vacating the injunction, done as much as apparently some people now think has been accomplished without vacating the injunction. There would have been no interruption in the injunction being there and being in place. You're suggesting we could have just issued, in our opinion, said the injunction now reads as follows. Or order the trial court to enter an injunction modified with your language. So I have two specific references here. I was thinking about 28 U.S.C. 2106, which sort of establishes for this court a supervisory power and the power to modify, reverse, vacate... And what's the other one? And that section has been interpreted in Unitherm... What's the site? ...Green Court case. Excuse me, it's... Is that U.S. Smith-Eckridge? Yes. What's the site, though? I have number 04597. It's, let's see, 546 U.S. 394. And I have the Weisskram case, I think, which preceded it, Weisskram v. Marley, which is 528 U.S. 440. Okay. All right. So... Okay, I think your time has expired. We let it go over a little bit because you had some questions from the court. But I think we do have to end it at this point, Mr. President. Thank you, Your Honor. Thank you for your argument, Mr. Chung. Thank you for your argument. The case is submitted.